CALEB STEINSPRING et al. *v.* BENNETT & SPRAGUE.

A contract must be understood in that sense in which it will have some effect, rather than in that in which it can have none. *Ut res negis valeat quam pereat.*

The Act of Congress of the 19th of June 1834, reviving the Act of the 29th of May 1830, must be considered as embracing provisions engrafted on the latter Act by the Statute of the 23d of January 1832, under which it was not legal to assign or transfer a certificate of purchase from the Register of the Land Office, previous to the issuing of the patent. 10 An, 597 ; 20 Howard, U. S. R., 501.

A patent, to whomsoever issued, inures to the benefit of him to whom the patentee would be bound to make conveyance of the legal title. 4 An., 266.

Where a party purchases from another his interest in certain land, and a patent is obtained therefor, the former is merely an equitable owner, and as the patent by fiction of law refers back to the day of entry and takes date with it, the sale of his interest was the sale of the land itself. 21 Howard 240.

APPEAL from the District Court of the Parish of Madison, *Farrar, J.*

M. *Wallace,* for plaintiffs. *A. R. Hynes* and *A. Featherman,* for defendants and appellants.

MERRICK, C. J. The plaintiffs claim title to a tract of land containing one hundred and sixty-nine 63-100 acres, (in possession of the defendants,) as heirs at law of *F. Steinspring* and *Ephraim Sprewell,* deceased.

The defendants hold by alleged mesne conveyances from the same persons who they aver sold their interest in the lands in controversy July 27, 1835, to one *Walter Byrne.*

The plaintiffs allege "that the said *Frederick Steinspring* and *Ephraim Sprewell* acquired said land by purchase from the Government of the United States, on the 27th day of July, 1835, the same having been entered in their joint names, and that said land continued the common property between them at their respective deaths, and is still common property.

The plaintiffs produce a certified copy of the patent which purports to have been issued to *Sprewell* and *Steinspring* on the 2d day of August, 1837.

The defendants produce, as the commencement of their claim of title, two acts under private signature, in which *Steinspring* and *Sprewell* transfer to *Walter Byrne,* in consideration of $211 50, " the privilege or pre-emption right granted to them under the Act of Congress passed on the 19th day of June, 1834, and laid upon fractional section of lot No. 71, township 15, range 13, east."

The plaintiffs contend, among other things, that this sale is void, as in contravention of the Act of Congress of 1834 reviving the Act of 1830.

The burden of proof is upon the plaintiffs to show the facts necessary to avoid defendants' title. Their ancestors have been paid the price of the land, and therefore they should show affirmatively that there was some legal obstacle to the transfer of title.

If their ancestors paid the price to the Government and obtained certificates on the day they allege they acquired the land by purchase, then, on the production of defendants' title, in the absence of other proof, the law will presume the sales were made afterwards on the same day. *Ut res negis valeat quam pereat.* 3 An. R. 363.

The testimony of *James M. Carter,* taken by defendants, shows the fact is in accordance with the presumption, and that the parties all being present at Mon-

26

roe, *Byrne* furnished the money to make the payment, and that the transfers were then made. The presumption and proof bring the case within the principle settled in the case of. *Marks* v. *Dickson*, 10 An. 598, and 20 Howard's U. S. R. 501.

The patent produced by the plaintiffs would lead to the supposition that the parties were mistaken as to the nature of the rights of *Steinspring* and *Sprewell*, for it recites the payment was made under the Act of 24th April, 1820, (3 Stat. at Large, p. 566,) which allows of the ordinary entries.

But whether the purchase was made under the latter act or the pre-emption law of 1834 reviving the act of 1830 and the amendment of 1832, the patent must inure to the benefit of the defendants, because plaintiffs' ancestors were bound to make *Byrne* a title. See *McGill* v. *McGill*, 4 An. 266.

The acts under private signature show that *Sprewell* and *Steinspring* intended to sell, and *Walter Byrne* intended to acquire by those acts whatever interest the former had in the land. Art. C. C. 1840, Nos. 2, 3 and 4. As they were the equitable owners, and as the patent by fiction of law refers back to the day of entry and takes date with it, the sale of their interest was the sale of the land itself. 21 Howard, 240, *French* v. *Spencer*; 1 An. 426, *Trudeau* v. *McVickars*.

But if there were doubt on this subject, and the recital in the patent were to be disregarded, the case would be still with the defendants, because the Act of 1832 authorized the pre-emptors to transfer their certificates of purchase or final receipts; and the instruments offered in evidence may well be considered such transfer. 4 Statutes at Large, p. 496.

*Walter Byrne* having been under said act entitled to the patent, the error in issuing the same could not deprive him of his right.

It is unnecessary to consider the bill of exception taken by plaintiffs' counsel, as the case is with the defendants with *Carter's* tenth answer rejected.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower Court be avoided and reversed, and that there be judgment against the plaintiffs' demand and in favor of the defendants; and that the plaintiffs pay the costs of both Courts.